[Cite as *State v. Rand*, 2026-Ohio-2461.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-A-0057 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ORA VICTORIA RAND, V, | Trial Court No. 2025 CR 00059 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: June 29, 2026
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Dane R. Hixon*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Adam Parker*, Goldberg Dowell & Associates, L.L.C., 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, P.J.

{¶1} Appellant, Ora Victoria Rand, appeals the judgment of the Ashtabula County Court of Common Pleas, sentencing her to a term of imprisonment of a minimum of seven years up to a maximum of ten and one-half years, after she was found guilty by a jury of one count of aggravated trafficking in drugs. After careful consideration of Rand's assignments of error challenging the propriety of the prosecutor's statements during closing argument and whether her counsel was ineffective for failing to object, as well as a review of the record and pertinent law, we affirm the trial court's judgment.

{¶2}   On February 19, 2025, an Ashtabula County Grand Jury charged Rand with one count of aggravated trafficking in drugs in the vicinity of minors, a second-degree felony, in violation of R.C. 2925.03(A)(1) and (C)(1)(c).

{¶3}   The matter proceeded to a jury trial on August 15, 2025. The State presented as witnesses City of Ashtabula Police Detectives Bryan Rose and Spencer Gale, Ohio Bureau of Criminal Investigation Forensic Scientist Martin Lewis, and the confidential informant who recorded the controlled buy and purchased the narcotics (the "C.I."). The State also introduced as evidence an audio and visual recording taken by the C.I. on a police recorder that looks like a cellphone.

{¶4}   Det. Rose testified that on January 19, 2025, the day of the controlled buy, he was in charge of surveillance and watched the audio and visual recording from the C.I.'s recording device as it occurred. Det. Rose was parked across the street from the site of the purchase, the apartment of Rand's accomplice, Desiree Clark, in Ashtabula, Ohio. Through the live feed, Det. Rose observed the C.I. knock on the door and a minor open the door into the living room. Rand was laying on the floor, and another minor was behind her. The C.I. spoke with Rand, and Rand asked the C.I. if "she had something for Desiree." The C.I. handed Rand $180 in cash. Clark, carrying a small child, came down the stairs and placed methamphetamine wrapped in baggies on the television stand, which the C.I. picked up. When the C.I. left the apartment, Rand followed her for approximately 75 yards. Det. Rose followed Rand and then returned to his position across the street until he saw her return to the apartment. The C.I. met with Det. Gale and gave him the narcotics.

{¶5}   On cross-examination, Det. Rose explained Clark had offered to sell drugs to the C.I. via the Facebook Messenger application, Clark was the one who handled the narcotics, and the transaction took place at Clark's apartment.  Rand and the C.I. never mentioned the narcotics in their conversation.  Defense counsel asked Det. Rose if he ever made "it a point being an officer in this case, to get [Rand's] side of the narrative or ask her certain questions about what she was doing or why she was there?"  Det. Rose replied he did not and he was not the case agent.  On redirect, Det. Rose testified it was common to have different actors involved in a drug transaction, "to distance themselves from one [part of the transaction] or the other" "so they can say that they didn't partake in that part of it."

{¶6}   Lewis, the forensic scientist who analyzed the narcotics, testified the C.I. purchased 11.29 grams of methamphetamine, a Schedule II controlled substance.

{¶7}   The C.I. testified she contacted Clark on the Facebook Messenger application to purchase the narcotics.  When she arrived at Clark's apartment, Rand was lying on the floor.  She was acquainted with Rand and did not know Rand would be there.  She gave Rand the money, and Clark set the narcotics down on a table.  The C.I. did not know what Rand did with the money she gave her.  Rand asked the C.I. if she could see her cellphone, and the C.I. gave Rand her phone.  The C.I. explained to Rand that the other phone (the recording device) did not work unless there was Wi-Fi.  Rand also questioned the C.I. on why she did not arrive in a vehicle.  The children were in close proximity, and the C.I. asked them several conversational questions.  When she left the apartment, the C.I. was not aware Rand was following her.

Case No. 2025-A-0057

{¶8}     On cross-examination, the C.I. confirmed she spoke only with Clark about purchasing narcotics, she did not know Rand would be at Clark's apartment, and she never spoke to Rand about the transaction or gave Rand a reason as to why she was giving her money.

{¶9}     Det. Gale testified part of the recording was just audio because the C.I. put the device in her purse after she entered the apartment.  In addition to Rand on foot, a grey vehicle also followed the C.I. after the C.I. left the apartment, which the police were never able to identify.  On cross-examination, Det. Gale confirmed that to his knowledge, Rand never arranged the price, facilitated the buy, or arranged the details.  As relevant to Rand's assignments of error, defense counsel engaged Det. Gale in the following colloquy:

> [Defense counsel:]  So at no point in time did you ever have a conversation with Ms. Rand?
>
> [Det. Gale:]  In reference to what?
>
> [Defense counsel:]  In reference to this incident on January 19th.
>
> [Det. Gale:]  I have had conversations with Ms. Rand.  I don't know that the context was specific to this incident.
>
> [Defense counsel:]  Okay.  After -- let me rephrase.  So after the informant returns, you send everything to BCI.  Do you have any conversations with Ms. Rand about this specific incident?
>
> [Det. Gale:]  I don't recall.  Again, I have had conversations with Ms. Rand. I don't know that it was about this, the details of this specific incident.  I don't want to say 100 percent, so I want to say I don't recall on that, sir.
>
> [Defense counsel:]  Okay.  So you don't recall asking her directly what her involvement could have been in this situation, if any?
>
> [Det. Gale:]  No.  I don't recall that at all.

{¶10} Prior to closing arguments, the court instructed the jury, in part, on the following:

> Neither the opening statements of counsel at the beginning of this trial, nor the closing arguments of counsel, which you will be hearing are to be considered by you as evidence. Arguments of counsel to the jury are provided by law for the purpose of aiding the jury in its analysis of the evidence and afford counsel an opportunity to summarize the evidence and present their views. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.

{¶11} As relevant to Rand's assignments of error, during closing argument, the prosecuting attorney reviewed the burden of proof, the indictment, and the circumstances of the drug buy in which Rand accepted the C.I.'s money in exchange for the drugs, noting Rand's bystander defense in the following statement:

> Now, if you'll recall the defense attorney's opening statement, he made a comment that the defendant was just a bystander in all of this. But the evidence does not support that, ladies and gentlemen. The evidence, in fact, shows that Rand and Clark were a team completing the drug transaction. . . .
> . . .
>
> Additionally, it was brought out in Detective Gale's testimony, that following this transaction in 2024, he had occasion to have subsequent conversations with Ms. Rand. And at no point did she ever say, Detective Gale, in January of this year I just want you to know, I had occasion to observe a drug transaction. I was just standing there that day. I just need you to be aware of this. Absolutely not. Why, because she's involved in it.

{¶12} During its rebuttal argument, the prosecuting attorney stated the following:

> And, yes, ladies and gentlemen, the State did talk a lot about public safety at different points in this trial. As you go back to deliberate, you are Ashtabula County. You get to decide what is acceptable in our community. We have a major, rampant crime and drug problem in our community. All at the hands of people like Ms. Rand, okay. Who take people like [the C.I.], who had very serious drug problems, who go out and commit other crimes, who commit other acts. It all stems from people, just like Ms. Rand. She is responsible for drug trafficking in our community. She is responsible for destroying people's lives. She is responsible for engaging in the drug trade here in our community.

Case No. 2025-A-0057

{¶13} The jury returned a guilty verdict, finding Rand had committed aggravated trafficking in drugs in the vicinity of minors. At a sentencing hearing approximately one month later, the court sentenced Rand to an indefinite prison term of a minimum of seven years up to a maximum of ten and one-half years.

{¶14} Rand timely appealed and raises two assignments of error for our review:

{¶15} "[1.] The trial court committed plain error in allowing the prosecutor to comment on Ms. Rand's silence, and make emotional appeals to the jury.

{¶16} "[2.] Ms. Rand's trial counsel provided ineffective assistance by failing to object to prosecutorial misconduct."

**Prosecutorial Misconduct**

{¶17} In her first assignment of error, Rand contends that during the State's closing argument, the prosecutor improperly commented on her right to remain silent, i.e., her silence to the detectives following the incident, and inflamed the passions of the jury by commenting on the rampant drug problem in the community. Rand asserts these statements prejudiced the jury and rise to the level of plain error.

{¶18} In reviewing prosecutorial statements and closing arguments for error, appellate courts examine whether the challenged statements were improper, and if so, whether they prejudicially affected the appellant's substantial rights. *State v. Kidd*, 2007-Ohio-6562, ¶ 77 (11th Dist.). "[A] prosecutor's improper statement will justify the reversal of a conviction only if the claim, after being reviewed against the entire record, undermines the 'fairness of the trial and contributed to a miscarriage of justice.'" *Id.*, quoting *U.S. v. Obregon*, 893 F.2d 1307, 1310 (11th Cir. 1990). *See also State v. Mauer*, 15 Ohio St.3d 239, 266 (1984); *State v. Jones*, 90 Ohio St.3d 403, 420 (2000). "Thus, in general, the

Case No. 2025-A-0057

conduct of a prosecuting attorney during trial 'cannot be made a ground of error unless that conduct deprives the defendant of a fair trial.'" *Kidd* at ¶ 77, quoting *Mauer* at 266.

{¶19} Prosecutors are given wide latitude in closing argument. *See State v. Davis*, 76 Ohio St.3d 107, 119 (1996). The closing argument must be viewed in its entirety to determine whether appellant was prejudiced. *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996).

{¶20} Further, failure to object to alleged improper statements made by a prosecutor during closing arguments waives all but plain error review on appeal. *State v. Lester*, 126 Ohio App.3d 1, 8 (12th Dist.), citing *Ballew* at 255. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Id.*, citing *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990).

{¶21} As our review reveals, the prosecutor was referencing Rand's bystander defense and defense counsel's cross-examination of both detectives wherein he questioned whether they discussed the incident with Rand and inquired into her involvement. The State can respond to issues raised by the defendant, *State v. Cassano*, 2002-Ohio-3751, ¶ 101; and the prosecutor was not referring to Rand's right to remain silent. Thus, we do not find these statements improper. *See, e.g., State v. Woodward*, 2011-Ohio-6019, ¶ 43 (12th Dist.) (when viewed in the context of the closing argument in its entirety, the prosecutor's comments appeared to be fair based on the evidence and within the latitude accorded the prosecution during closing argument).

{¶22} We do, however, agree with Rand that the State's concluding remarks regarding the drug problem in the community were improper. The State concedes the statements are "problematic." "[T]he prosecutor must 'avoid insinuations and assertions

Case No. 2025-A-0057

which are calculated to mislead the jury,' must not 'express his personal belief or opinion . . . as to the guilt of the accused' and cannot 'allude to matters which will not be supported by admissible evidence.'" *State v. Steed*, 2016-Ohio-8088, ¶ 48 (6th Dist.), quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).

{¶23} While improper, it cannot be said in light of the evidence in this case that the prosecutor's statements were "'so inflammatory as to render the jury's decision a product solely of passion and prejudice.'" *Id.*, quoting *State v. Williams*, 23 Ohio St.3d 16, 20 (1986). "Prosecutorial misconduct rises to plain error if it is clear that an accused would not have been convicted in the absence of the improper statements." *Id.* For example, in *Steed*, the prosecutor remarked on drug trafficking in society, which included stating, "it is poison for profit, and [the appellant] was the one making a profit or attempting to profit." *Id.* at ¶ 45. The Twelfth District determined that while the remarks were "improper," they "were not so inflammatory or prejudicial such that reversal would be justified," and the appellant "was not denied a fair trial." *Id.* at ¶ 49.

{¶24} We note the cases Rand cites in support, *State v. Lane*, 2022-Ohio-3775 (3d Dist.) and *State v. Allen*, 2018-Ohio-887 (6th Dist.), also came to the same conclusion. Thus, in *Lane*, the Third District determined the prosecutor's improper closing remarks on the drug problem in the community did not rise to the level of plain error given "the plentiful evidence from which the jury could find Lane guilty as charged in the indictment." *Id.* at ¶ 60. Likewise, in *Allen*, the Sixth District determined the prosecutor's statements during closing argument were improper since they were "directed to inflame the passions of the jurors in relation to the ongoing heroin epidemic." *Id.* at ¶ 48. However, because the "photographic evidence overwhelmingly demonstrate[d] that appellant was an active and

willing participant in the possession and transport of the drugs," the improper statements did not prejudice the appellant's substantial rights. *Id.*

{¶25} Similarly in this case, the overwhelming evidence supports Rand's conviction, and she would have been convicted regardless of the prosecutor's improper statement. In addition, the trial court instructed the jury that the closing arguments were merely arguments and not evidence. We must assume the jurors followed the court's instruction. *See Lester*, 126 Ohio App.3d at 8. Thus, Rand has failed to demonstrate the statements resulted in such prejudice that she was denied a fair trial.

{¶26} Accordingly, Rand's first assignment of error is without merit.

### Ineffective Assistance of Counsel

{¶27} In her second assignment of error, Rand contends defense counsel's failure to object to the prosecutor's improper statements fell below a reasonable standard of assistance and deprived her of a fair trial.

{¶28} "'In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, it must be determined that counsel's performance fell below an objective standard of reasonableness. Second, it must be shown that prejudice resulted. "Prejudice exists when 'the result of the trial would have been different' but for counsel's ineffectiveness."'" (Internal citations omitted.) *State v. Allen*, 2013-Ohio-434, ¶ 15 (11th Dist.), quoting *State v. Woodard*, 2010-Ohio-2949, ¶ 11 (11th Dist.), quoting *In re Roque*, 2006-Ohio-7007, ¶ 11 (11th Dist.).

{¶29} "In applying the foregoing standard, a 'reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional

Case No. 2025-A-0057

representation.' *Strickland* at 689. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995)." *Id.* at ¶ 16. Further, "[t]o succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. If the objection would not have been successful, the appellant cannot prevail on a claim of ineffective assistance of counsel." (Internal citations omitted.) *State v. Stroud*, 2023-Ohio-569, ¶ 53 (11th Dist.).

{¶30} As we found no prejudicial error in Rand's first assignment of error, her challenge to the ineffectiveness of defense counsel due to his failure to object necessarily fails. Rand cannot demonstrate that but for defense counsel's failure to object, the outcome of the trial would have been different. *See, e.g., State v. Flitcraft*, 2024-Ohio-3146, ¶ 69 (11th Dist.) (having found the appellant did not establish prejudice in a previous assignment of error, he could not demonstrate ineffective assistance of counsel on the same basis); *State v. George*, 2024-Ohio-2125, ¶ 55 (11th Dist.) (same).

{¶31} Accordingly, Rand's second assignment of error is also without merit.

{¶32} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-A-0057

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

---
PRESIDING JUDGE MATT LYNCH

---
JUDGE JOHN J. EKLUND,
concurs

---
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-A-0057